pending the plaintiff's appeal from the judgment; and asserted that they had acted in good faith in the conveyance made to other persons.

I am of opinion that the motion was rightly denied. The plaintiff did not comply with the terms of the judgment, which required him to take the premises by payment of the consideration within 10 days after entry and notice thereof, but appealed therefrom. The plaintiff's appeal from the judgment did not stay the defendants, for the appellant did not file an undertaking pursuant to the provisions of section 1323 of the Code of Civil Procedure. It is insisted, however, that this section does not apply, for the reason that it reads:

"When the appeal is from a judgment in favor of the owner of real estate, in an action to set aside a conveyance thereof, or in an action to compel the specific performance of a contract for the sale thereof, such owner shall have the same right to sell or dispose of the same as though no appeal had been taken; unless the appellant shall file," etc.,

—while this is an action to recover a deposit.

I think that we should regard the spirit and purpose of the statute, and so construe it as to carry out the legislative intent. People ex rel. Wood v. Lacombe, 99 N. Y. 44–49, 1 N. E. 599; Spencer v. Myers, 150 N. Y. 269–274 et seq., 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675. The purpose of the statute is to prevent a mere appeal ipso facto from staying an owner, who has a judgment for specific performance, from selling his realty during that appeal. It matters not, then, whether the owner has recovered his judgment as a plaintiff or as a defendant. Further, I think that this case is fairly within the terms of the statute. A counterclaim is a cause of action (Code Civ. Proc. § 501), and is necessarily so (Walker v. A. C. Ins. Co., 143 N. Y. 167, 38 N. E. 106; McCulloch v. Vibbard, 51 Hun, 227, 4 N. Y. Supp. 202); and therefore this counterclaim may be regarded, when read with the provisions of the statute, as an action to compel a specific performance. The learned counsel for the appellant makes the point that the defendants' counterclaim is necessarily that they can dispose of the property and keep his money paid on account of the purchase. Not necessarily. The plaintiff sued to recover money paid on account of the purchase price on the ground that the title was unmarketable. The court decided that it was marketable, and decreed specific performance. The specific performance decreed involved payment by the plaintiff. The money already paid on account was to be credited to him. It does not follow, when the defendants by their act abandoned their right to specific performance, that the judgment still awarded to them the amount paid by the plaintiff on account of the purchase.

The order must be affirmed, with $10 costs and disbursements. All concur.

(116 App. Div. 798)

In re DALY et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

EMINENT DOMAIN—PROCEEDINGS—APPEAL.

Laws 1893, p. 325, c. 189, § 16, provides for an appeal to the Supreme Court from the appraisal and report of commissioners appointed in proceedings for the condemnation of property for waterworks purposes, and

provides that on the hearing of the appeal the court may direct a new appraisal, and that in case of a new appraisal the second report shall be "final and conclusive" on all parties or persons interested. *Held,* that no appeal lies from an order confirming a report on a second appraisal.

Application and petition by Michael T. Daly and others for the condemnation of Lake Gleneida for a part of the water supply of the city of New York. From an order confirming the report of commissioners, certain claimants appeal. On motion to dismiss the appeal. Motion granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Isaac N. Mills, for the motion.

I. J. Beaudrias, Artemas H. Holmes, and Lewis H. Freedman, opposed.

WOODWARD, J. In the year 1893 the city of New York, proceeding under the provisions of chapter 189, p. 317, of the Laws of 1893, petitioned for the condemnation of Lake Gleneida, in the town of Carmel, Putnam county, to be used as a part of the water supply of the said city. An order of the Supreme Court at Special Term was made in the year above named, condemning various parcels of real estate, including the property involved in this appeal, known as "Parcels 63 and 64," and appointing commissioners of appraisal under the provisions of the said act. The commissioners reported in regard to said parcels in September, 1899. In the following year the report was brought on for hearing and confirmation at a Special Term of this court held in Dutchess county, and confirmation was refused; the order of the court setting the report aside and appointing new commissioners. An appeal to the Appellate Division (72 App. Div. 394, 76 N. Y. Supp. 28) resulted in an affirmance of the order, and on motion an appeal to the Court of Appeals was dismissed, on the ground that the order was not final. 173 N. Y. 640, 66 N. E. 1106. The new commissioners, under the order of 1900, with substitutions due to deaths, proceeded in due form to consider the questions involved, and brought in a report which was duly confirmed, and certain of the claimants have appealed from the order of confirmation. The Cole claimants move to dismiss the appeal, on the ground that, this being a second appraisal, no appeal lies to this court.

The only practical question submitted upon this appeal is in relation to the construction of the statute. Section 16, c. 189, p. 325, of the Laws of 1893 provides for the confirmation of the report of commissioners of appraisal, and it likewise provides that:

"Such report, when so confirmed, shall, except in the case of an appeal, as provided in section 22 of this act, be final and conclusive as well upon the said mayor, aldermen and commonalty of the city of New York as upon owners and all persons interested in or entitled to an estate, right, title, interest, privilege, term or easement in said real estate, and also upon all other persons whomsoever."

Section 22 provides:

"Within twenty days after the notice of the confirmation of the report of the commissioners, * * * either party may, by appeal or notice in writing

to the other party, appeal to the supreme court from the appraisal and report of the commissioners. Such appeal shall be heard on due notice thereof being given, according to the rules and practice of said court, either at a Special or General Term thereof, as the appellant may desire. On the hearing of such appeal the court may direct a new appraisal and determination of any question passed upon by the same or new commissioners in its discretion, but from any determination of the Special Term an appeal may be taken to the General Term, and from any determination of the General Term either party, if agreed, may take an appeal which shall be heard and determined by the Court of Appeals. In the case of a new appraisal the second report shall be final and conclusive on all parties and persons interested."

The evident scheme of the statute is to permit the original commissioners to fix upon the amount of compensation to be awarded those who have interests involved in the real estate to be taken, detailed provisions being made to permit each person so interested to bring his claim before the commissioners, and then to permit each person so interested to bring his claim before the commissioners, and then to permit of appeal upon any question or questions which may be involved to the court of last resort. The case having thus been passed upon all of the questions which arose on the original appraisal, it is provided that if a second appraisal is made it shall be "final and conclusive"; that is, all of the parties having been before the commissioners and having had a full opportunity to be heard and to have any questions of law fully considered upon appeal, the Legislature has provided that the court may in its discretion direct a new appraisal and determination of any question passed upon, either by the same commissioners or by new ones, and the second report, which will presumptively follow the rules laid down by the court upon appeal, is to be final and conclusive upon all of the parties. When the whole scope of the statute is considered, this does not appear to be a harsh rule. It provides all of the opportunity which may be fairly expected to review any question of law which is involved in the proceeding, and in effect merely makes conclusive the judgment of the commissioners upon the specific questions submitted to them for determination under rules which the court will, presumptively at least, lay down upon the original appeals.

In People ex rel. S. & U. H. R. R. Co. v. Betts, 55 N. Y. 600, the statute involved had this identical provision, and it was sought to review the second report of commissioners under a common-law writ of certiorari; but the court refused all relief, and dismissed the appeal on the ground that, the statute having provided that the second report should be final and conclusive, there was no authority for reviewing such action, either by direct appeal or through a writ of certiorari. The court say:

"And now the appellants say the writ should lie in this case, for there is no remedy by appeal from a second appraisal and report. True, because the statute says that it shall be final and conclusive upon all parties interested; not because an appeal is not the appropriate remedy. An appeal is the method provided by law for remedying erroneous action of commissioners of appraisal. And when the statute says that the second appraisal shall be final and conclusive, it is not that it means only to refuse that mode of remedy, but that it means to deny any remedy."

See Matter of D. & H. C. Co., 69 N. Y. 209; Matter of Fitch, 147 N. Y. 334, 336, 41 N. E. 699.

It is clearly within the legislative power to deny an appeal. No one seems to question this, and, the language of the statute providing that in "the case of a new appraisal the second report shall be final and conclusive," it is difficult to understand how the appellant have any standing upon this appeal.

The motion to dismiss the appeal should be granted, with costs. All concur.

(116 App. Div. 777)

GALLOWAY v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

1. CARRIERS—SHIPPING CONTRACT—CONSTRUCTION.
   Provisions in a contract of shipment limiting the liability of a carrier, where equivocal, are to be construed against the carrier.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 697.]

2. SAME—CARRIAGE OF LIVE STOCK—LIMITATION OF LIABILITY.
   A provision in a contract for the shipment of live stock to the effect that, in the event of any unusual delay owing to the carrier's negligence, the shipper shall accept as full compensation the amount expended in the purchase of food and water, does not prevent recovery in a case where the shipper during the period of delay was unable to obtain food and water, and in consequence of the delay some of the cattle died, but only contemplates a case where the shipper can feed and water the cattle during the delay, and thereby save them, and does so.

3. APPEAL—WAIVER OF EXCEPTIONS.
   Exceptions to refusals to give instructions are waived, where not mentioned by appellant in his oral argument or brief.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4256, 4259.]

   Jenks, J., dissenting.

Appeal from Trial Term, Orange County.

Action by Albert R. Galloway against the Erie Railroad Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

See 95 N. Y. Supp. 17.

The cause of action alleged by the complaint is for damages for injuries to cattle by negligent delay in transit as freight on the defendant's road.

The plaintiff shipped 23 cows by the defendant's road from Buffalo to the plaintiff's cattle switch near Monroe, Orange Co., N. Y., on November 25th, 1901. He accompanied his cattle. The train was a daily fast freight through to Jersey City; it carried perishable freight such as cattle, meat, fruit and the like. It left Buffalo on time, viz., at 6 p. m. November 25th, 1901, and arrived at Port Jervis on time, viz., at 4:40 p. m. November 26th, a distance of 336 miles. There, as was usually but not always, done, cars not carrying through freight to Jersey City were cut out of the train and put into a local train, so that the through freight might go through without delay.

The local train to which the car carrying the plaintiff's stock was transferred lay at Port Jervis until 7:52 p. m., when it started, a delay of about 3 hours. The testimony for the defendant is that the delay was caused by the engine of the train being repaired, but that there were plenty of other engines there. The plaintiff testified that the train arrived at his switch at Monroe at "about" 2 o'clock next morning, which would make the whole time of transit from Buffalo about 32 hours. The towerman at Oxford tower, at which plaintiff's switch is, testified from his train sheets that the train arrived there at 12:25 and left at 12:40 a. m. The conductor of the train testi-