### RAMSHORN DITCH CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1920.)

No. 5513.

1. **Waters and water courses** ⊙=142—**Appropriator can conserve appropriated waters, regardless of seepage law.**

An appropriator of waters for irrigation is entitled to save, and use for the beneficial irrigation of the lands under its canal, water which had escaped therefrom by seepage, independent of the legislation of the state in relation to seepage waters.

2. **Waters and water courses** ⊙=151—**Appropriated water, allowed to return to river, is subject to new appropriation.**

Where an appropriator of water permits a portion thereof, which had seeped from its canal, to return to and mingle with the waters of a river from which it had been taken, such returned waters are to be considered part of the water of the river, as though never diverted therefrom, and

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

inures to the benefit of the appropriators on the river in the order of their appropriations.

**3. Waters and water courses ☞151—Intent is essential to abandonment of appropriated waters.**

Seepage and waste water, allowed to return to its natural channel, with no intention by the appropriator to recapture it, is abandoned; but the intention to abandon is essential, and it must be determined as a question of fact from the evidence in each particular case.

**4. Waters and water courses ☞151—Abandoned water may be reclaimed, if there are no intervening rights.**

An appropriator, who has abandoned his rights to water, may at any time resume possession and exercise all such rights, if no new rights have intervened.

**5. Waters and water courses ☞145—Appropriation cannot be transferred to new source with old priority.**

The Nebraska board of irrigation, highways, and drainage had no authority to transfer an appropriation from a natural stream to a channel deriving its waters from seepage from another canal, and to give the appropriation of such seepage waters the priority of the old appropriation from the natural stream.

**6. Waters and water courses ☞151—Appropriator has reasonable time to reclaim seepage.**

Appropriated water is not deemed abandoned as soon as it seeps from the canal in which it is being conveyed; but the appropriator must be allowed a reasonable time in which to save and use water escaping by seepage and waste from his canal or ditch.

**7. Waters and water courses ☞133—State statute authorizes reclaiming seepage water without appropriation.**

Rev. St. Neb. 1913, § 3426, authorizing the owner of an irrigation canal to collect seepage water thereunder to apply to the irrigation of land covered by the original appropriation of such canal, gives the right to the use of such water without formal appropriation proceedings, since the objects of the state laws regulating proceedings for appropriation to provide water for as many owners of land as possible, and to decide priority between the different claimants, do not apply to the use of seepage water by the original appropriators.

**8. Waters and water courses ☞140—Change of appropriation of seepage waters from a canal cannot be given date of original appropriation.**

Even if the seepage waters flowing in the channel not the original and natural stream are public waters, subject to appropriation under Rev. St. Neb. 1913, § 3427, an appropriation of such waters by a former appropriator from the natural stream cannot be given the date of the original appropriation from the stream, so as to take priority over a diversion of the water by the appropriator from whose canal it had escaped, which diversion was made before the change of appropriation.

**9. Waters and water courses ☞144—Lands irrigated from reclaimed seepage held within original project.**

Where the original application by the United States for appropriation of water stated an intention to irrigate all the lands shown on the accompanying plats, and to irrigate all lands on the north side of the river, supplementing those with an adequate supply, and furnishing full rate to all others, an approval of the application as one for the irrigation of lands described therein, not covered by prior existing rights, did not exclude lands under the other existing canals intended to be covered by the new project, so that the United States could reclaim seepage waters from its canals to irrigate such lands with the provisions of Rev. St. Neb. 1913, § 3426.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. **Waters and water courses ☞222—Warren Act authorized contract between United States and a land company for irrigation by reclaimed seepage waters from canal of reclamation project.**

Under the Warren Act (Comp. St. §§ 4738–4740), and Laws Neb. 1911, c. 151, passed in aid thereof, a contract between the United States and a land company for the delivery to the latter of water which escaped by seepage from the canal of a reclamation project was a valid contract, which gave the United States the right to conserve and deliver water thereunder.

11. **Waters and water courses ☞222—Reclamation appropriation having source in another state is valid.**

In view of Reclamation Act (Comp. St. §§ 4700–4708), the Warren Act (Comp. St. §§ 4738–4740), and the legislation of Wyoming and Nebraska, an appropriation by the United States Reclamation Service for the irrigation of lands in Nebraska is valid, though the source of the supply is in Wyoming.

12. **Waters and water courses ☞247(2)—Injury to reclamation service, by taking seepage water which United States had a contract to sell, may be enjoined.**

The United States suffers injury, entitling it to an injunction, by the prevention of delivery of water which seeped from its irrigation canal to a corporation with whom it had a contract to deliver the water at a substantial price.

Appeal from the District Court of the United States for the District of Nebraska; Robert E. Lewis, Judge.

Suit by the United States against the Ramshorn Ditch Company and others. Decree for complainant (254 Fed. 842), and defendants appeal. Affirmed.

Thomas M. Morrow, of Scottsbluff, Nev. (Clarence A. Davis, Atty. Gen. of Nebraska, and William Morrow, of Scottsbluff, Neb., on the brief), for appellants.

Ethelbert Ward, Sp. Asst. Atty. Gen., of Denver, Colo., and Henry A. Cox, District Counsel for United States Reclamation Service, of Mitchell, Neb. (Thomas S. Allen, U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. Appellee brought this action against appellants for the purpose of restraining them from in any way interfering with the waters of Sheep creek, Neb., or the controlling works used by it in diverting said waters. The case was heard on pleadings and proofs, and a decree entered granting the relief prayed for. The appellants, who are the Ramshorn Ditch Company and officers of the state of Nebraska having to do with the distribution of water for irrigation between different claimants, appealed.

The question for decision may be stated as follows: Has the Ramshorn Ditch Company the right to divert and apply for irrigation purposes 45⁴/₇ second feet of water, or any part thereof, flowing in the creek above mentioned or has appellee the right to economically save and to continue to economically use said water for beneficial irrigation? The material facts upon which the decision of the above ques-

tion depends are largely undisputed. The questions involved may be discussed under two heads, viz.: (1) Rights acquired under original appropriations. (2) Rights acquired under the seepage law of Nebraska. The source of the water is the Interstate Canal, which carries water previously impounded by appellee in the Pathfinder Reservoir, located in the state of Wyoming.

Appellee claims that this water thus brought into the state of Nebraska in connection with this North Platte irrigation project, and which by seepage, drainage, and waste has developed into a flowing stream in Sheep creek, it has the right to economically save and continue to economically use for beneficial irrigation. Appellants claim that this water now flowing in Sheep creek, conceding its source to be in the Interstate Canal, is a part of the Platte river, from which it was originally taken, and subject to appropriation for irrigation purposes the same as the water of a natural stream, or if it is seepage water, and not public water of the state of Nebraska, that under the law and the evidence its rights as a prior appropriator of the water in question is superior to those of appellee. A very full and clear statement of the facts and the legislation of Congress and of the state of Nebraska was made by the learned trial judge and will be found in United States v. Ramshorn Ditch Co. et al. (D. C.) 254 Fed. 842. It would serve no useful purpose to again restate those facts, as they are fully sustained by the evidence and are quite voluminous.

[1] The source of the water in controversy being conceded, it follows that it is a portion of the 1,600 second feet of water for which appellee has a valid appropriation, and which it is entitled to save and use for the beneficial irrigation of lands under the Interstate Canal, independent of the legislation of Nebraska in relation to seepage waters. Griffiths v. Cole (D. C.) 264 Fed. 369; McKelvey v. North Sterling Irr. Dist., 179 Pac. 872; Hagerman Irr. Co. v. East Grand Plains Drainage Dist., 25 N. M. 649, 187 Pac. 555; Lambeye v. Garcia, 18 Ariz. 178, 157 Pac. 977.

[2] If appellee permits said water to flow unused back to the North Platte river, it is to be considered a part of the water of said river, as though never diverted, and inures to the benefit of the appropriators on the river in the order of their appropriation, when it becomes mingled with the water of the natural stream. Section 3427, Rev. Stat. Neb. 1913; Water Supply & Storage Co. v. Larimer & Weld Reservoir Co., 25 Colo. 87, 53 Pac. 386; Burkhart v. Meiburg, 37 Colo. 187, 86 Pac. 98, 6 L. R. A. (N. S.) 1104, 119 Am. St. Rep. 279; Lambeye v. Garcia, supra; Hill v. American Land & Live Stock Co., 82 Or. 202, 161 Pac. 403; Comstock v. Ramsay, 55 Colo. 244, 133 Pac. 1107; Durkee Ditch Co. v. Means, 63 Colo. 6, 164 Pac. 503; Trowell L. & I. Co. v. Bijou Irr. District, 65 Colo. 202, 176 Pac. 292. It may be stated here that there is no evidence in the record that any appropriator, including the Ramshorn Ditch Company, does not receive his full appropriation from the Platte river, notwithstanding the use by appellee of the water of Sheep creek.

[3] Seepage and waste water may be said to have been abandoned by the original appropriator when it is returned or allowed to return

to its natural channel, with no intention on the part of the appropriator of recapturing it.    To constitute abandonment, however, there must be an intent to abandon (White v. Nuckolls, 49 Colo. 170, 112 Pac. 329; Matter of Daly, 123 App. Div. 709, 108 N. Y. Supp. 635 [affirmed in 192 N. Y. 571, 85 N. E. 1108]; Hough v. Porter, 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728; Edgmont Imp. Co. v. N. S. Tubbs Sheep Co., 22 S. D. 142, 115 N. W. 1130; Lindblom v. Water Co., 178 Cal. 450, 173 Pac. 994; Water Co. v. Kellogg, 31 Idaho, 574, 174 Pac. 602), the existence or nonexistence of which is a question of fact to be determined according to the evidence presented in each particular case, and one whose rights depend on an alleged abandonment must assume the burden of proving such abandonment. 40 Cyc. 727, 728, and cases cited.

[4] The appropriator who has abandoned his rights to water may at any time resume the possession and exercise of them, if no new rights have intervened.   Platte Valley Irr. Co. v. Central Trust Co., 32 Colo. 102, 75 Pac. 391; Hall v. Lincoln, 10 Colo. App. 360, 50 Pac. 1047; Beaver Brook Res., etc., Co. v. St. Vrain Res., etc., Co., 6 Colo. App. 130, 40 Pac. 1066.   In this connection it may be stated that appellee, at the cost to it of $1,450, diverted the water from Sheep creek into the Farmers' or Tri-State ditch in June, 1914, and continued to do so during each irrigation season thereafter up to July 21, 1917.  The application for an appropriation of those same waters by the Ramshorn Ditch Company was filed on September 13, 1916, and granted September 22, 1916.   In this application the water which the ditch company desired to appropriate was described as "seepage water arising in the Sheep creek basin"; said application having been made presumably under the provisions of section 3426, Rev. Stat. Neb. 1913, relating to seepage water.   The ditch company had an old appropriation from the North Platte river for 45⁵/₇ second feet dated March 20, 1893.   The permit granted simply transferred the headgate of this old appropriation, which was on the North Platte river, to Sheep creek, on the ditch constructed by appellee, and was given priority as of the date of the granting of the original appropriation, although the evidence shows that there was no water running in Sheep creek at the point where the headgate of the new appropriation was located until years after the old appropriation was granted.   This new appropriation was granted subject to the condition that—

"The prior rights of all persons who, by compliance with the laws of the state of Nebraska, have acquired a right to the use of the waters of this stream, must not be interfered with by this appropriation. The amount of the appropriation shall not exceed 45⁴/₇ cubic feet per second of time. * * * This appropriation shall be supplementary to and part of the original appropriation covered by docket No. 945, Ramshorn Ditch Company, and shall take the same priority as docket No. 945."

[5] We are of the opinion that, conceding for the present that the appropriation granted to the Ramshorn Ditch Company September 22, 1916, had any validity, it was not within the power of the board of irrigation, highways, and drainage of Nebraska to grant a priority in connection therewith dating back 23 years before the company had

sought to use any of the water of Sheep creek for irrigation and long prior to the time that there was any water flowing in said creek.

[6] It must be conceded, of course, that the water which the evidence shows had been diverted and controlled by appellee by the means of ditches in Sheep Creek valley, and which was allowed to flow in the several drainage ditches back into the Platte river unused, was abandoned; but the seepage water which was still flowing and continued to flow into Sheep creek was subject to be recaptured, and was recaptured by appellee by the construction of its controlling works, by which the water was turned into the Farmers' or Tri-State ditch, in June, 1914, nearly three years before the ditch company attempted to actually take any of the water from Sheep creek, and over two years before September 22, 1916.

Counsel for appellants claim that seepage water is abandoned as soon as it leaves the canal or ditch wherein the original appropriated water is running; but that rule could not prevail in the present case, because it as a year or more before the indication of seepage from the Interstate Canal began to show itself in the Sheep Creek and Dry Sheep Creek valleys. Certainly the appropriator must have a reasonable time in which to save and use water that by seepage and waste has escaped from his canal or ditch. We are therefore of the opinion that, as against the ditch company, appellee had the right in June, 1914, to recapture the seepage water, which had, it is admitted, come from the Interstate Canal, before it reached the Platte river, and that, having done so, its right as an original appropriator of the waters in the Interstate Canal to the seepage water in question is superior to the permit granted the ditch company September 22, 1916, especially in view of the above-quoted limitations upon that appropriation. We now come to consider the rights of the parties under the legislation of Nebraska in regard to seepage waters. Sections 3426 and 3427, Rev. Stats. Neb. 1913, read as follows:

Section 3426: "Any person, persons, district, company or corporation owning, constructing or operating an irrigation canal in this state, are hereby authorized to collect or assist to collect any seepage water thereunder or under any adjacent irrigation canal by the construction of drainage ditches and to apply said waters to irrigate with on the lands covered by the original appropriation of such canal, while said seepage waters are being conducted by said drainage ditches toward the natural streams. Said use to be subject to limitations as follows:

"First—The right of any land owner to raise, pump, develop and use on his own land water percolating thereunder shall not be impaired.

"Second—Seep waters so collected by the canal owner or operator shall be treated as supplemental to and part of the original appropriation of such canal, the total quantity of which shall not be increased nor exceed an aggregate of three acre feet in any calendar year for each actually irrigated acre of land."

Section 3427: "When any seepage or drain water is mingled with that of any natural stream, it shall become part of the public waters of the state, subject to diversion among existing appropriators of the state of Nebraska, in the order of their respective priorities and rights based upon preferential use as defined by the laws of the state of Nebraska."

By section 3426 appellee was clearly authorized to collect any seepage water under its Interstate Canal by the construction of drainage ditches and apply said seepage water to irrigate lands covered by its

original appropriation, while said seepage water was being conducted by said drainage ditches toward the Platte river; this right of collecting seepage water, so far as appellee was concerned, being subject to the conditions specified in subdivisions 1 and 2 of said section. The ditch company claims that the appellee could acquire no right or authority under section 3426, unless it made an application to the board of irrigation, highways, and drainage of Nebraska for a permit, as is required when one desires to appropriate a portion of the public waters or natural streams of Nebraska. The ditch company made its application on September 22, 1916, under this section, and counsel maintain that appellee has no rights thereunder, because it never made an application for a permit under that law.

[7] We are of the opinion that section 3426, of its own force and effect, conferred the right upon any person, district, company, or corporation owning, constructing, or operating an irrigation canal in Nebraska to collect seepage water as therein provided. The principal object that there should be a controlling authority to regulate the use of the public waters of the state was for the purpose of providing water for irrigation purposes to as many owners of land as possible, and to decide between different claimants as to their priority. This work had all been done as to the persons, districts, companies, or corporations mentioned in section 3426, and the object of the section was to give such persons as are mentioned the right to collect seepage water. Each of the above parties was entitled to the seepage water under his or its canal, and there could be no priorities. We are unable to see any reason why an appropriation which has been distinctly granted by the Legislature should be subject to the approval or disapproval of the board of irrigation, highways, and drainage.

Counsel for the ditch company claims that this seepage statute and the laws of Nebraska in regard to obtaining the right to appropriate the public waters of the state running in natural streams relate to kindred subjects, and should be construed together, being in pari materia; but the reason that there should be an application as to the original appropriation of water of natural streams is inapplicable to seepage water, because the latter, subject to certain conditions, is granted by law. The learned District Judge has stated other reasons for reaching the same conclusion, in which we fully concur, and agree with him that the permit of September 22, 1916, by which the ditch company caused the state officials to cut the water of Sheep creek out of the Farmers' or Tri-State ditch, and turn it down the drainage ditch, until it came to where the ditch crossed the Ramshorn ditch, and then turned it into that ditch, conferred no right or authority so to do. In its application of September 22, 1916, the ditch company represented to the board of irrigation, highways, and drainage that the water in question was not public waters of the state of Nebraska, and that Sheep creek was not a natural stream.

[8] It is one of the contentions of the ditch company now that the water flowing in Sheep creek is a natural stream, and that the United States has no right to take said waters for irrigation purposes, the same having been abandoned and on their way to the Platte river;

but the application of the ditch company was not an application for an appropriation of the public waters of the state, but to take seepage water not constituting a natural stream for the purpose of irrigation. It had, of course, the appropriation of March 20, 1893; that appropriation, however, had its headgate on the Platte river, which was so expensive to maintain, on account of the shifting sands, that the whole object of the application of September 22, 1916, seems to have been to get rid of the expense of maintaining the headgate on the Platte river after appellee had spent $45,000 constructing ditches in which these seepage waters could flow to the river or be used for the purpose of irrigation.

Section 3427, above quoted, is a declaration by the state of Nebraska that seepage water does not become public waters of said state until it mingles with that of a natural stream. Conceding, however, for the sake of argument, that the water in controversy might, in any view of the case, be called public waters of the state, and that the same cannot be used by any person for the irrigation of lands, unless a permit is granted by the board of irrigation, highways, and drainage, how does the ditch company stand on that proposition. It has no such appropriation. Its rights depend on an appropriation from the Platte river, changed to seepage water in Sheep creek. Certainly its rights so far as this case is concerned are not superior to those of the United States.

[9] It is next contended that the lands under the Farmers' or Tri-State ditch are not lands under the Interstate Canal, and therefore the United States is not in the position to seek the benefits of section 3426, supra. The following language is found in the application of the United States for its original application:

"It is the intention to irrigate all lands shown on the accompanying plats, whether under existing canals or under projected canals or extensions."

This language would include all lands in the Farmers' or Tri-State Canal, as shown by the "accompanying plats." The following language is also found in the application:

"Interstate Canal.—This canal contemplates the enlargement of the Whalen Falls Canal and continued easterly to the limit of irrigable land, and a right to irrigate all the irrigable lands on the north side of the North Platte river, supplementing those with an inadequate supply at any season and furnishing a full right to all others."

The application was approved, and the following language is found in the approval:

"The lands to be irrigated under this permit being all lands described in said application, which lie within the state of Nebraska, and are not covered by prior existing rights."

In view of the fact that it was the object of the irrigation project of which the Interstate Canal was a part to irrigate all lands, whether in existing canals or in projected canals or extensions, the words "and not covered by prior existing rights" do not refer to lands under other canals for the irrigation of which the Pathfinder project was constructed.

[10] We are also of the opinion that by virtue of the so-called Warren Act, approved February 21, 1911 (36 Stat. 925 [Comp. St. §§ 4738–4740]), and the Nebraska act of April 10, 1911 (Laws 1911, c. 151), apparently passed in aid of the Warren Act, that the contract between appellee and the Tri-State Land Company ·for the delivery of the water in controversy after the completion of the necessary ditches and controlling works was a valid contract, and gave appellant the right to furnish water for the irrigation of lands under the Farmers' or Tri-State ditch. The date of the contract August 20, 1912, and the furnishing of water thereunder July, 1914, are all prior to September 22, 1916, the date of the permit to the Ramshorn Ditch Company.

[11] Counsel further argue that appellee has not a valid legal appropriation for land in Nebraska under the Interstate Canal, because the canal has its headgate in Wyoming and carries water from that state to irrigate lands in Nebraska. The theory of counsel is that, as neither Wyoming nor Nebraska has jurisdiction of the entire works of the Pathfinder project, both states exceeded their jurisdiction when they issued permits to the appellee for the reclamation project. Lamson v. Vailes, 27 Colo. 201, 61 Pac. 231, and Turley v. Furman, 16 N. M. 253, 114 Pac. 278, are cited in support of this contention. It is doubtful as to whether these cases support the contention; but, conceding that they do, they have no application as to the Interstate Canal between Wyoming and Nebraska, especially in view of the fact that this question has been passed upon directly by both the Supreme Court of Wyoming and the United States Circuit Court of Appeals for the Eighth Circuit in a Nebraska case. Willey v. Decker, 11 Wyo. 496, 73 Pac. 210, 100 Am. St. Rep. 939; Perkins County, Neb., v. Graff, 114 Fed. 441, 52 C. C. A. 243. The rights of appellee in connection with the reclamation project must be considered in view of the Reclamation Act (32 Stat. 388 [Comp. St. §§ 4700–4708]), the Warren Act (36 Stat. 925), and the legislation of Wyoming and Nebraska; and, when thus considered, we see no objection to the right of the United States to appropriate and use for irrigation purposes, in either Wyoming or Nebraska, the waters diverted by it from the North Platte river in Wyoming and flowing in the Interstate Canal through Wyoming and Nebraska.

[12] It is further insisted that the appellee will not be injured by allowing the ditch company to take the water granted by the permit of September 22, 1916, from Sheep creek. Appellee expended about $50,000 in the drainage ditches that collect and carry the water, and $1,450 on the controlling and diversion works which enable it to deliver the water to the Farmers' or Tri-State Canal. The contract between appellee to furnish water to the Farmers' or Tri-State Canal provides for a price of $5 per acre foot, which appears by the evidence to be about $1,000 per second foot, or over $45,000, which water the ditch company seeks to compel appellee to deliver to it free of charge.

We are satisfied that the conclusion reached by the trial court and the reasons upon which such conclusion was reached are sound, and that the decree entered below should be affirmed; and it is so ordered.